UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL S. JOHNSON,

        Plaintiff,

v.                                      Case No. 18-cv-1696-pp

WARDEN SCOTT ECKSTEIN,
JOHN KIND, MICHAEL SCHULTZ,
CHRISTOPHER STEVENS, JAY VAN LANEN,
WILLIAM SWIEKATOWSKI, JAMES ELSINGER,
DARCY STEVENS, CHRIS HEIL, and PATRICK BRANT,

        Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER (DKT. NO. 33); DENYING DEFENDANTS' MOTION TO REVISE SUMMARY JUDGMENT BRIEFING SCHEDULE (DKT. NO. 43); GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE EXCESS PAGES (DKT. NO. 45) AND DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 50)**

On August 6, 2018, Judge Barbara B. Crabb allowed the plaintiff to proceed on his Eighth Amendment claim against defendants Van Lanen and Kind for subjecting him to a substantial risk of harm by informing other staff and inmates the plaintiff had orchestrated a gang-related assault; his First Amendment retaliation claim against defendants Swiekatowski, Schultz, James Elsinger, Chris Heil, Darcy Stevens, Christopher Stevens and Patrick Brant for the plaintiff's filing of specific inmate complaints and for the plaintiff declining to help reduce gang activity; and his Fourteenth Amendment due process claim against defendants Schultz and Elsinger regarding four specific hearings. Dkt.

1

No. 14 at 9-17. She also allowed him to proceed against defendant Scott Eckstein in his official capacity as warden for purposes of pursuing injunctive relief on his First and Eighth Amendment claims. Id. On October 24, 2018, Judge Crabb granted the defendants' motion to transfer the case to this district. Dkt. No. 24. This court issued a scheduling order on October 30, 2018, setting February 27, 2019 as the deadline for completing discovery and March 29, 2019 as the deadline for filing dispositive motions. Dkt. No. 28.

Since then, the plaintiff has filed a motion for a preliminary injunction and temporary restraining order, dkt. no. 33, and a motion to compel discovery, dkt. no. 50. The defendants have filed a motion for a revised briefing schedule, dkt. no. 42, and a motion for leave to file excess pages, dkt. no. 45. The order resolves those motions.

**A.    The Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 33)**

At the time he filed his motion for a preliminary injunction and temporary restraining order, the plaintiff was representing himself. About two and a half months later, counsel made an appearance on behalf of the plaintiff. Dkt. No. 45. The plaintiff's lawyer has not withdrawn the motion for injunctive relief.

The motion contains a list of incidents that the plaintiff claims constitute retaliation against him by various staff members. The incidents fall into several categories.

2

- *Attempts to get other inmates to turn on the plaintiff*

    - On March 14, 2018 (the day the court received the complaint), defendants Kind and Van Lanen attempted to get inmate Shirell Watkins to turn on the plaintiff during an interview of the inmate in front of the plaintiff. Dkt. No. 34 at 2-3. The defendants purportedly told Watkins that the December 2016 assault on him was ordered by the plaintiff. Dkt. No. 35, Ex. 1 at 15. According to the plaintiff, Watkins was released from restrictive housing that same day and was expected to be an informant for Kind and Van Lanen against the plaintiff. Dkt. No. 35 at 3.

    - At some point, after a gang riot had erupted and was extinguished, the plaintiff states that Kind and Van Lanen interviewed several inmates including Gregory Banks regarding the riot. Dkt. No. 34 at 6. Although the plaintiff was not involved in the riot, Banks, who was, said that the defendants mentioned the plaintiff's name during Banks's interview. Specifically, the plaintiff states he was told that Van Lanen said, "Amir isn't going to let it go." Id.

    - The plaintiff alleges that Van Lanen also interviewed inmate Dereal Lott, and Van Lanen purportedly attempted to scare and threaten Lott into cooperating "by claiming that the plaintiff is going to retaliate against him for their attack on the vice lords." Id.

    - The plaintiff says Van Lanen had an argument with an inmate named Antoine Nelson on August 22, 2018, during which the two debated about the plaintiff and his lawsuit. Id. Van Lanen allegedly called the plaintiff a liar. Id.

    - On November 22, 2018, the plaintiff alleges that Van Lanen attempted to bribe inmate Jesse Schlichting to "fabricate gang evidence against the plaintiff and his lawsuit." Id. at 8.

    - Van Lanen also tried to get two other inmates to say that the plaintiff ordered and orchestrated Watkins December 2016 assault. Id. at 9.

- *Interference with the plaintiff's outgoing and incoming mail*

    - The plaintiff states that on May 27, 2018, he filed an inmate complaint that his incoming mail was being stolen. Id. at 7.

    - On October 24, 2018, the plaintiff says he filed an inmate complaint against defendant Swiekatowski for withholding,

3

delaying, or denying delivery of the plaintiff's mail. The plaintiff
    says that after he complained, he received his mail. Id.

  - The plaintiff asserts that on December 16, 2018, he filed an inmate
    complaint against Swiekatowski for stealing the plaintiff's letter
    and a picture from his nephew. Id. at 7-8.

  - The plaintiff states that on November 1, 2018, Van Lanen
    improperly opened his outgoing mail that included his inmate
    complaint appeals. Id. at 4, 11. This alleged act purportedly led to
    Van Lanen discovering that the plaintiff had used and so possibly
    possessed an ink pen in violation of the no-ink-pen policy that was
    implemented on April 16, 2018. Id. at 4. The plaintiff asserts that
    the next day his cell was searched, and he was strip searched by
    the officers in search of the ink pen. Id. at 4-5, 11. An ink pen was
    found, and the plaintiff received a conduct report. Id. at 5. The
    plaintiff states that Kind ordered defendant Schultz to have the
    plaintiff do the entire 180 days in restrictive housing in response to
    the pen being found. Id. at 12. The plaintiff goes on to discuss the
    conditions of his confinement while being housed in restrictive
    housing. Id. at 12-13.

  o *Fabricated conduct reports*

    - The plaintiff states that on December 18, 2018, Swiekatowski
      fabricated conduct report #3233716 against him for "group
      resistance and petitions and assault (aiding and abetting)." Id. at
      8. A Lieutenant Wickman served the plaintiff with the conduct
      report on December 20, 2018. Id. According to the plaintiff, while
      serving the conduct report Wickman attempted to give the plaintiff
      "360 days disciplinary separation" by having the plaintiff "waive his
      rights." Id. The plaintiff states he refused. Id. The plaintiff says
      Wickman is (was) scheduled to conduct the hearing on that
      conduct report. Id.

In terms of relief, the plaintiff says that he "is simply requesting that he be

provided a fair hearing and to be free of fabricated retaliatory conduct reports,

and transferred." Id. at 15. He asks the court to grant his motion, restrain the

defendants from retaliating against him "with any further fabricated conduct

reports," to restrain the defendants from "holding no hearing on the newly

4

fabricated retaliatory conduct report," to enjoin the defendants "and order that they immediately transfer the plaintiff to another prison in the Wisconsin DOC [Department of Corrections] so that the plaintiff may litigate this case without being harassed or retaliated against." Id. at 23.

The defendants ask the court to deny the motion. Dkt. No. 36 at 2. They state that the plaintiff's claims are not sufficiently related to the instant lawsuit; the plaintiff has not set forth facts sufficiently demonstrating retaliatory conduct; and it is not in the public's interest for the court to prohibit Wisconsin DOC officers from taking disciplinary action against inmates based on legitimate security concerns or to maintain order in the correctional facility. Id.

To obtain preliminary injunctive relief, a plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). If he demonstrates those three threshold factors, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. Id.; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520

U.S. 968, 972 (1997) (per curiam)). The court may grant such extraordinary relief only if the motion seeks relief of the same character sought in the underlying suit. Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); Neuroscience, Inc. v. Forrest, No. 12-cv-813-bbc, 2013 WL 6331348, at *1 (W.D. Wis. Dec. 5, 2013) (denying motion for preliminary injunction because it raised issues outside scope of complaint).

With respect to preliminary injunctive relief regarding prison conditions, Congress has mandated that such relief must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). The court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief [.]" Id.

The disciplinary hearing the plaintiff requests in the motion for injunctive relief involves conduct report #323376, which was issued *after* the plaintiff filed this lawsuit and based on an alleged assault that occurred *after* he filed the lawsuit. Dkt. No. 34 at 18. This is a new event; it is not related to the claims on which Judge Crabb allowed the plaintiff to proceed. The plaintiff's allegations regarding the conduct report are directed mainly against a Lieutenant Wickman, who is not a party to this case. A court may not order

6

injunctive relief against a person who is not a party to the case at issue. See Federal Rule of Civil Procedure 65(d) ("[e]very order granting an injunction . . . is binding only upon the parties to the action"). And a federal §1983 case is not the proper place for an inmate to challenge the outcome of a prison disciplinary procedure:

> It is not within the authority of federal courts to review evidence submitted at prison disciplinary hearings and substitute its opinion for the disciplinary hearing committee's opinion whether the inmate is guilty or innocent of offenses charged in conduct reports. That is a function of state courts. To challenge the outcome of disciplinary hearings, prisoners first must appeal a disciplinary decision to the prison warden under [the Wisconsin Administrative DOC Code]. If a prisoner's appeal to the warden is unsuccessful, he may file a writ of certiorari in circuit court, seeking judicial review of the disciplinary decision. In those state court proceedings, evidence can be received and the application of state regulations re-examined. If the substance of the disciplinary action is found to be without merit, the decision can be vacated. A favorable ruling on the substance of the disciplinary report during either the prison appeal or the writ of certiorari would constitute evidence that the substance of the disciplinary report was without merit.

Simpson v. Nickel, No. 05-C-232, 2005 WL 2860251 at *2 (W.D. Wis. Oct. 31, 2005) (citations omitted).

Regarding the other conduct reports that the plaintiff claims were issued in retaliation, the plaintiff acknowledges in his motion that the reports were issued in retaliation for his filing of inmate complaints that are not at issue in this case. His reply in support of the motion outlines how the purportedly fabricated conduct reports were issued in retaliation for his "engag[ment] in

7

constitutionally protected conduct against certain defendants" *after* he filed this case. Dkt. No. 40 at 4. While the motion discusses conduct that is like some of the conduct the plaintiff alleged in the complaint, that conduct relates to different conduct reports.

Even if the plaintiff's allegations about the retaliatory conduct reports were related to the claims in the complaint, the court does not have the authority to dictate prison officials' management and maintenance of order in a correctional institution by barring them from issuing conduct reports against an inmate, or by ordering them to transfer an inmate. Such actions are beyond the scope of what the court can order in any narrowly tailored preliminary injunction. Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012) ("[T]he PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: '[P]rison officials have broad administrative and discretionary authority over the institutions they manage.'") (quoting Hewitt v. Helms, 459 U.S. 460, 467 (1983)). For the court to step in and tell the Department of Corrections how to respond to inmate disciplinary issues or where to place inmates would be "highly intrusive to the inner workings of the prison system and would tread upon the DOC's authority over running their institution." Capoeria v. Pollard, Case No. 16-CV-224, 2016 WL 1452398, at *4 (E.D. Wis. Apr. 13, 2016) (citing Baird v. Hodge, Case No. 13–cv–0376–MJR–SCW, 2013 WL 6493694, at *8–9 (S.D. Ill. Dec. 10, 2013)).

8

The court recognizes that the plaintiff's motion begins by asserting that defendants Kind and Van Lanen are continuing to place the plaintiff at substantial risk of harm. The plaintiff has not shown that he would suffer irreparable harm if he does not obtain injunctive relief. A person requesting a preliminary injunction and a temporary restraining order must show "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The plaintiff alleges that the defendants began putting the plaintiff at substantial risk of harm over two years ago. The plaintiff has not shown how their alleged conduct now has enhanced or accelerated that risk. He has not demonstrated that he has suffered harm as a result of their actions after he filed the lawsuit. To the contrary, the plaintiff has stated that the other inmates he claims the defendants are trying to coerce into turning on him have shown support for the plaintiff by informing him of the occurrences. Those inmates even providing him with unsworn declarations attesting to the defendants' alleged conduct. Dkt. No. 35, Ex. 1.

The court will deny the plaintiff's motion for a preliminary injunction and temporary restraining order.

**B.    The Defendants' Motion for Revised Briefing Schedule for Summary Judgment (Dkt. No. 43)**

On February 22, 2019, about a month before the deadline for filing summary judgment motions, the defendants filed a motion asking the court to revise the summary judgment briefing schedule outlined in the October 30,

2018 scheduling order. Dkt. No. 43. The defendants indicated that they wanted to file a combined summary judgment motion, and asked for an additional month to file it. Id. at 1-2. Because the court has stayed all proceeding at this time, it will deny the defendants motion to revise the summary judgment briefing scheduling.

The court did not get to that motion as quickly as it should have, and four days before the summary judgment deadline, the parties filed a joint motion to stay the proceedings. Dkt. No. 47. The court granted that motion two days later, and indicated that it would calendar a scheduling conference. Dkt. No. 51. The court will deny the motion as moot, and at the end of this order, will set a deadline for the parties to notify the court of their proposed schedule for filing summary judgment motions and for briefing those motions.

**C.     The Defendants' Motion for Permission to File a Brief in Excess of the Page Limit and to file Additional Proposed Findings of Fact (Dkt. No. 45)**

The defendants note that Judge Crabb allowed the plaintiff to proceed on six different First Amendment retaliation claims (relating to three different conduct reports, as well as alleged retaliation claims regarding the monitoring of the plaintiff's mail and a change in his status relating to a program), the Eighth Amendment claim and the due process claims relating to five different disciplinary hearings. Dkt. No. 45 at 2. Because of the number of claims, and the fact that the defendants propose to file a joint summary judgment motion, they ask to be allowed to file a brief of up to forty-five pages (fifteen pages over

10

the limit in the rules) and up to 225 proposed findings of fact. Id. at 3. The plaintiff did not object to this motion.

The court allowed the plaintiff to proceed against ten defendants on three, multi-part claims. Each part of each claim involves its own set of facts. This warrants the court granting the defendants' request.

**D.     The Plaintiff's Motion to Compel (Dkt. No. 50)**

As the court noted, the deadline for completing discovery was February 27, 2019. On March 26, 2019—almost a month later—the plaintiff filed a *pro se* motion to compel. Dkt. No. 50. The plaintiff stated that despite multiple requests, he had not received any of the discovery he had requested, and that he'd made good-faith efforts to resolve the issue with the defendants, without success.

The plaintiff filed this motion a day after the court received a notice of appearance from the plaintiff's attorney. It may be now that counsel has come on board, he has been able to obtain the discovery on the plaintiff's behalf. The court will deny the plaintiff's motion to compel without prejudice. If the plaintiff's lawyer believes that there is outstanding discovery which, despite good faith efforts to work things out with the defendants, has not been provided, he may file the appropriate motion.

**E.     Conclusion**

The court **ORDERS** that the plaintiff's motion for a preliminary injunction and temporary restraining order is **DENIED**. Dkt. No. 33.

The court **ORDERS** that the defendants' motion for revised briefing schedule for summary judgment is **DENIED as moot**. Dkt. No. 43.

The court **ORDERS** that the defendants' motion for leave to file excess pages and additional proposed findings of fact is **GRANTED**. Dkt. No. 45. The court **ORDERS** that the defendants may file a summary judgment brief of up to forty-five pages, and may file up to 225 proposed findings of fact.

The court **ORDERS** that by the end of the day on **Friday, October 18, 2019**, the parties shall file a proposed deadline for filing summary judgment motions and a proposed briefing schedule.

The court **ORDERS** that the plaintiff's motion to compel is **DENIED without prejudice**. Dkt. No. 50.

Dated in Milwaukee, Wisconsin, this 19th day of September, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**